# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| JOSEPH KENNEDY, ET AL. | * | CIVIL ACTION |
| --- | --- | --- |
| VERSUS | * | NO. 11-1056 |
| LAFAYETTE WORKBOAT RENTALS, INC. | * | SECTION "L"(2) |

## ORDER & REASONS

The Court has pending before it Defendant's Motion for Summary Judgment (Rec. Doc. 12). The Court has reviewed the briefs and the applicable law and now issues this Order and Reasons.

## I. BACKGROUND

This civil action arises out of the death of Brandon Sentell Mouton. Plaintiffs are the decedent's parents, Joseph and Barbara Kennedy. Mr. Mouton was employed as a seaman by Defendant Lafayette Workboat Rentals, LLC, and assigned to the M/V ROCK, a barge doing oil cleanup off the coast of Lafourche Parish, Louisiana. Although the record is somewhat uncertain as to the exact time, Mr. Mouton was last seen between 8:00 a.m. and 8:30 a.m. on July 22, 2010 on the deck of the barge, while the barge was approximately 2.5 to 3 miles off shore from Port Fourchon. He was not seen again and his body has never been found.

Plaintiffs filed suit in this Court on May 4, 2011 against Lafayette Workboat Rentals, on behalf of Mr. Mouton's estate and in their individual capacities. They allege that Mr. Mouton's death was caused by Defendant's negligence or the unseaworthiness of the barge. Defendant denies liability.

## II. PRESENT MOTION

Defendant now moves for summary judgment on Plaintiffs' claims of unseaworthiness and Jones Act negligence. Citing discovery responses, Defendant contends that there is a complete lack of evidence regarding the circumstances of Mr. Mouton's disappearance and accordingly a complete lack of evidence that the M/V ROCK was unseaworthy or that Defendant was negligent in any way that contributed to the disappearance.[1]

In opposition, Plaintiffs attempt to articulate genuine factual disputes regarding the timing of Mr. Mouton's disappearance. They also argue that summary judgment is inappropriate because the doctrine of *res ipsa loquitur* permits an inference of negligence, and because Defendant may be liable on a theory of failure to rescue Mr. Mouton.

### III.  LAW AND ANALYSIS

#### A.  Standard on Motion for Summary Judgment

A district court can grant a motion for summary judgment only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). The court must find "[a] factual dispute [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party [and a] fact [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

---

[1]Defendant also moves for summary judgment on the issue of Plaintiffs' ability to recover non-pecuniary damages for Mr. Mouton's wrongful death. Plaintiffs do not oppose summary judgment on that issue.

248 (1986)).

A movant can show that a fact "cannot be ... genuinely disputed" by "showing that the materials cited do not establish the ... presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995) (citing Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986)). The mere argued existence of a factual dispute will not defeat an otherwise properly supported motion. *See Anderson*, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.* at 249-50 (internal citations omitted).

**B.     Unseaworthiness and Jones Act Negligence**

Plaintiffs bring claims pursuant to the doctrine of unseaworthiness as well as the Jones Act. "To establish a claim of unseaworthiness, 'the injured seaman must prove that the [vessel] owner has failed to provide a vessel . . . which is reasonably fit and safe for the purposes for which it is to be used.'" *Boudreaux v. United States*, 280 F.3d 461, 468 (5th Cir. 2002) (quoting *Jackson v. OMI Corp.*, 245 F.3d 525, 527 (5th Cir. 2001)). "A vessel's condition of unseaworthiness might arise from any number of circumstances." *Usner v. Luckenbach Overseas Corp.*, 400 U.S. 494, 499 (1971). For instance, in addition to the physical condition of the vessel, the vessel may have an unfit crew. *Id.*; *accord Bonmarito v. Penrod Drilling Corp.*, 929 F.2d 186, 189-191 (5th Cir. 1991). A vessel may also be unseaworthy because of "an unsafe

3

method of work." *Johnson v. Offshore Express, Inc.*, 845 F.2d 1347, 1354-55 (5th Cir. 1988); *accord Phillips v. W. Co. of N. Am.*, 953 F.2d 923, 928 (5th Cir. 1992) (noting that "an unsafe method of work may also render a vessel unseaworthy"). "In addition, the plaintiff must establish a causal connection between his injury and the breach of duty that rendered the vessel unseaworthy." *Jackson v. OMI Corp.*, 245 F.3d 525, 527 (5th Cir. 2001).

Under the Jones Act, an employer has the duty to "provide his seaman employees with a reasonably safe place to work." *Simmons v. Transocean Offshore Deepwater Drilling, Inc.*, 551 F. Supp. 2d 471, 475 (E.D. La. 2008) (citing *Colburn v. Bunge Towing, Inc.*, 883 F.2d 372, 374 (5th Cir. 1989)). An employer breaches that duty if it fails to exercise ordinary prudence and is thereby negligent. *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 338, 339 (5th Cir. 1997) (en banc). In other words, an employer breaches its duty if it disregards a danger that it "'knew or should have known.'" *Colburn*, 883 F.2d at 374 (quoting *Turner v. Inland Tugs Co.*, 689 F. Supp. 612, 619 (E.D. La. 1988)). "The standard of care for a Jones Act seaman is to act as an ordinarily prudent seaman would act in like circumstances." *Jackson v. OMI Corp.*, 245 F.3d 525, 528 (5th Cir. 2001). Apart from negligence, a plaintiff seeking relief under the Jones Act must show causation. "A seaman is entitled to recovery under the Jones Act if his employer's negligence is the cause, in whole or in part, of his injury." *Gautreaux*, 107 F.3d at 335. The Fifth Circuit has observed that this is a "liberal causation requirement," *Brister*, 946 F.2d at 354, one that places a "featherweight" burden on the plaintiff, *Landry v. Two R. Drilling Co.*, 511 F.2d 138, 142 (5th Cir. 1975) (quotation omitted).

Defendant points out the dearth of any evidence regarding how Mr. Mouton disappeared. In the absence of evidence, according to Defendant, there can be no genuine dispute that there

4

was any unseaworthy condition of the M/V ROCK or negligence by Defendant, or that any condition or negligence contributed to the disappearance.  Essentially, Defendant argues that the lack of evidence permits no more than speculation and conjecture regarding Defendant's liability for Mr. Mouton's disappearance, and there is no genuine fact issue for the trier of fact to decide.

In opposition, Plaintiffs raise three arguments.  <u>First</u>, Plaintiffs argue that there are inconsistencies in the available testimony regarding when and where Mr. Mouton was last seen that constitute a genuine dispute of fact.  Plaintiffs submit a written statement dated the day of the disappearance from a cook employed aboard the Barge LB250, upon which M/V ROCK crew members would eat meals, who states that:

> [Mouton] was standing in the front of the boat talking to a white guy sitting down 8:00 am today.

(Rec. Doc. 16-3 at 3).  Plaintiffs contrast this with statements recorded in the United States Coast Guard report of the search efforts which contains statements from the captain of the vessel that Mouton "was seen at 0830 on the corner of the barge talking to an unknown gentleman" and from "the crew" that Mouton "was last seen by workers on another vessel in the area smoking on the deck of the barge."  (Rec. Doc. 16-2 at 4).  According to Plaintiffs, these statements display the uncertainties regarding how Mouton disappeared and from where, which "are critical issues that need to be resolved before" the question of seaworthiness can be resolved.  (Rec. Doc. 16 at 4).

Plaintiffs are correct that there is uncertainty regarding how, when, and from where Mr. Mouton disappeared, but that uncertainty supports the motion for summary judgment and is not an impediment to it.  Even if the trier of fact heard testimony from all witnesses, assessed their credibility, and decided whether Mr. Mouton was last seen at 8:00 a.m. or 8:30 a.m., there is no

5

suggestion from the record that any of those witnesses can testify when Mr. Mouton disappeared and under what circumstances. In the absence of any such evidence, the jury could not link the disappearance to any condition of the boat or to any action or inaction by Defendant. Any finding of liability would be entirely speculative. There is no factual basis for the jury to find liability.

Second, Plaintiffs rely on the doctrine of *res ipsa loquitur*. The evidentiary doctrine of *res ipsa loquitur* permits an inference of negligence if: "1) the injured party was without fault; 2) the instrumentality causing the injury was under the exclusive control of the defendant; and 3) the mishap is of a type that ordinarily does not occur in the absence of evidence." *United States v. Nassau Marine Corp.*, 778 F.2d 1111, 1115-16 (5th Cir. 1985) (citing *Johnson v. United States*, 33 U.S. 46 (1948)). However, the state of the record clearly precludes application of the doctrine. There is no evidence regarding the nature of the "mishap," no evidence regarding Mr. Mouton's own possible fault, and no evidence regarding what instrumentalities were involved. Plaintiffs have not produced any factual predicate that might support an inference of negligence pursuant to *res ipsa loquitur*, and the doctrine is inapplicable here.

Third, Plaintiffs cite the maritime rescue doctrine. Pursuant to that doctrine, a vessel and its officers have a duty to search for a seaman who has fallen overboard. *See Reyes v. Vantage S.S. Co.*, 609 F.2d 140, 142 (5th Cir. 1980). There are two branches to the doctrine:

> The first branch of that doctrine is applicable where a seaman has apparently fallen overboard but (his) presence or location in the water is not readily discernable from the ship. That "search and rescue" branch requires the ship's officers to both rescue the seaman and to effect a search of the area traversed by the ship, so long as it is reasonably possible that the seaman remains alive in the water.
> But the second branch of the rescue doctrine is the one applicable to [decedent's] death. The second branch applies where the seaman falls or jumps overboard but

remains visible to those on board the ship. There, a long line of cases has imposed an affirmative Jones Act duty upon the ship to use every reasonable means to retrieve the seaman from the water.

*Id.* (quotations omitted). Plaintiffs also supply Mr. Mouton's employment application in which he disclosed an inability to swim.[2] They argue that summary judgment should be denied because "it should be up to the trier of fact to determine whether [Defendant] exercised the requisite reasonable standard of care in this matter when it discovered Mouton was missing." (Rec. Doc. 16 at 8).

There is no evidence, disputed or otherwise, that Mr. Mouton was seen in the water from the barge, or that he could have been seen. Plaintiffs have also failed to produce any evidence regarding the Defendant's efforts to search for Mr. Mouton that might possibly support a finding of a breach of that duty. It is not enough to say that whether search and rescue efforts are reasonable is normally a question for the trier of fact; Plaintiffs must produce some evidence to generate that fact question, and they have not done so here.

To sum up, Mr. Mouton seems to have disappeared. But Plaintiffs have produced no competent evidence from which the trier of fact could conclude by a preponderance that there was an unseaworthy condition of the barge or that Defendant did anything wrong that contributed to the disappearance, or that Defendant was negligent in its search and rescue efforts. The available evidence permits no more than speculation and does not present any genuine issues for the trier of fact. Summary judgment is appropriate.

**IV.    CONCLUSION**

---

[2]Plaintiffs also cite discovery responses in which Defendant denies that an "accident" occurred and that therefore no "accident" report was prepared. This appears to be no more than a semantic dispute rather than anything deserving evidentiary weight.

For the foregoing reasons, IT IS ORDERED that Defendant's motion for summary judgment (Rec. Doc. 12) is GRANTED and Plaintiffs' claims are dismissed with prejudice.

New Orleans, Louisiana, this 3rd day of January, 2012.

                                                                   UNITED STATES DISTRICT JUDGE